**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**MARK EKE,**

**Plaintiff,** **Civil Action No.: 8:18-cv-2941**

**v.**

**UNITED THERAPEUTICS, et. al.,**

**Defendants.**

---

## AMENDED COMPLAINT

---

Plaintiff Mark Eke, for his complaint against Defendants United Therapeutics, Martine Rothblatt, Jenesis Rothblatt, Shola Oyewole, and Robert Daye, alleges as follows:

## PRELIMINARY STATEMENT

1. This case is about the wielding of corporate power gone wild. Jessica Rothblatt, the daughter of United Therapeutics CEO Martine Rothblatt, engineered the decision to fire Mark Eke simply because he refused to sleep with her. As if that were not enough, Defendants then pressured Mark Eke into signing a separation agreement by threatening his life. As a result, Defendants violated Title VII of the Civil Rights Act of 1964, the Maryland Fair Employment Practices Act and Maryland common law.

## JURISDICTION

2. Jurisdiction is proper pursuant to Section 1-501 and 6-102 of the Courts and Judicial Proceedings article of the Maryland Code Annotated, among other applicable provisions.

3. Plaintiff Mark Eke has exhausted his administrative remedies with the Equal Employment Opportunity Commission and Montgomery County Human Rights Commission.

## VENUE

4. Venue is proper because this action arises from events that occurred in Montgomery

County, Defendant UT is located in Montgomery County, and Defendant UT does business in Montgomery County.

## PARTIES

5. Plaintiff Mark Eke is a natural person and resident of the State of Maryland.

6. Defendant United Therapeutics is an employer and regularly conducts business within the State of Maryland.

7. United Therapeutics (UT) is a Silver Spring, Maryland-based biotechnology company founded by Ms. Martine Rothblatt. It represents the culmination of her efforts to find a cure for her daughter Jenesis Rothblatt, who at a young age was diagnosed with pulmonary arterial hypertension.[1]

8. Martine Rothblatt is UT's Chief Executive Officer.

9. Jenesis Rothblatt is a UT senior executive. She works under Martine Rothblatt's supervision.

10. Other senior UT officials germane to this action are Mr. Shola Oyewole, Chief Information Officer; Mr. Robert Daye, Senior Manager of the Office of the Chairman; Ms. Alyssa Friedrich, VP of Human Resources; and Mr. Timothy Atolagbe, Senior Process Development Scientist.

**Eke's Excellent Work History at United Therapeutics**

11. At the age of 27, Mark Eke was hired by United Therapeutics on May 6, 2013 to work in the Information Technology Department. His supervisor was Shola Oyewole.

12. Eke worked as a Lead Senior Systems Administrator from May 2013 to March 2015. He was promoted to Systems Engineer II in March 2015 and stayed in the position until January 2017. He also provisionally worked as a Digital Archivist/Wikipedia Editor from August 2016 until

[1] https://www.forbes.com/forbes/2002/0107/138.html#4c7bbf8724f3. *See also* https://en.wikipedia.org/wiki/United_Therapeutics#cite_note-Forbes_2002-6

UT terminated his employment in January 2017.

13. Eke was well recognized for his accomplishments at UT. In fact, in 2014, Eke became the first person in the Information Technology Department to receive the "UT Key Contributor Award." As a result, he was quickly promoted to the Systems Engineer II position in March 2015 and then to the Digital Archivist position in 2016.

14. Eke was also highly regarded by the CEO Martine Rothblatt. She considered Eke to be one of the best employees at UT.

**Lung Biotechnology National Sales Meeting**
**(Las Vegas, Nevada - February 2015)**

15. On a company trip to Las Vegas, Nevada for a Lung Biotechnology national sales meeting, Eke arrived a day early with his team members. After dinner that day, most of the staff were out on the casino floor, sharing drinks and walking around. Eke sat a poker table with fellow employees. Jenesis, accompanied by a friend, showed up at the same poker table.

16. Eke announced that he was retiring for the night and that he was returning to his hotel room. As Eke walked back to his hotel room, Jenesis left the poker table and began to walk beside Eke. Along the way, Jenesis' friend told her she was walking in the wrong direction. Jenesis told her friend that she would walk with Eke and then meet up with her later.

17. Jenesis followed Eke into his hotel room. She attempted to hug him. But Eke refused to hug her. He told her he was tired and needed to sleep.

18. Eke wanted to tell Jenesis to leave but was scared of what could happen to him and his job if he refused her advances. So he lay in his bed with his clothes on and pretended to sleep. Without Eke's consent, Jenesis climbed into Eke's bed. She lay there for a while. Then she left Eke's room. s

19. Eke reported the incident to other employees within the company.

**Mark Eke's Apartment**
**(Silver Spring, MD - April 2015)**

20. Around April 2015, after the Las Vegas incident, Jenesis showed up unannounced at Eke's apartment in Silver Spring, MD. Eke lived directly across the street from United Therapeutics.

21. Jenesis sat with Eke in his living room after he let her in. Soon afterward, she stood up and walked into Eke's bedroom. Eke thought she needed to use his bathroom.

22. However, moments later, Jenesis returned to the living room naked. Eke was too shocked to talk. Jenesis got angry and demanded that he explain his silence. She taunted him for thinking he was "so special" and too good for her.

23. Eke insisted that Jenesis to put her clothes back on. Ignoring his request, Jenesis pressed herself against Eke and cooed, "Don't you find me attractive?" Eke begged her to put her clothes back on. He reminded her that they worked together and stressed that she was the daughter of Martine Rothblatt, the CEO.

24. Eke continued trying to reason with Jenesis. He told her that he "loved his job" and that they were "just friends" and that he did not want to be sexually involved with her. Jenesis replied, "I am Jenesis Rothblatt. No one has to know about this moment."

25. When Jenesis realized that Eke would not have sex with her, she glared at him and put her clothes back on.

26. The next morning, Eke woke up to a series of text messages Jenesis had sent him earlier that morning. She told Eke she was furious with him for rejecting her sexual advances. Eke grew worried.

27. When Eke got to work that day, he could not concentrate on his job duties. He kept wondering whether he would get fired for rejecting Jenesis Rothblatt's sexual advances.

28. Eke reported the incident to other employees within the company.

29. Because of Jenesis' reaction in his apartment and her furious text messages, Eke could not stop worrying about whether his refusal to sleep with her would cost him his job. As a result,

he suffered anxiety and insomnia.

**UT Senior Officials Force Eke to Work Closely with Jenesis Rothblatt**

30. In February 2016, a position for "Digital Archivist" was announced. The position was in the Office of the Chairman (OOC).

31. The position would report directly to Jenesis Rothblatt, who then was Senior Manager for the "Digital Signage" department. She was also the sole member of the digital team.

32. Around February 3, 2016, Jenesis texted Eke a picture with sexually explicit language. The picture said, "Fuck Humpday! I want to know when Fuck-me-so-hard-I-can't-walk day is." This made Eke worry even more about his job security.

33. On or about June 2017, Eke assisted Jenesis with a task associated with the new Digital Archivist position. Eke also assisted her with a "Wikipedia" associated task. Jenesis then asked Eke to apply for the Digital Archivist position.

34. Eke declined because it had nothing to do with IT, his area of expertise, because he did not want to give Jenesis additional opportunities to pressure him for sex.

35. Jenesis had the position changed by adding "Wikipedia Editor" to it. The position was changed in or about June 2017.

36. Jenesis once again asked Eke to apply for the position. But Eke declined.

37. Eke consulted with Chief Information Officer Shola Oyewole about the position. Oyewole told him, "You will be working for Jenesis, not Martine." Oyewole also advised him not to consider the position, because it was not beneficial to his "career goals."

38. Understanding the position reported directly to Jenesis, Eke chose not to apply for it because Jenesis would not stop pressuring him for sex.

39. From February 2016 to June 2016, Jenesis pressured Eke to take the Digital Archive position.

40. Robert Daye and Alyssa Friedrich also told Eke to take the position.

41. On or about June 17, 2016, VP of Human Resources Alyssa Friedrich said to Eke, "Martine

really loves you and will like for you to try out the position."

42. On or about June 17, 2016, Daye told Friedrich that Eke was interested in the position. Friedrich told Martine Rothblatt the same thing.

43. But that was untrue: Eke was not interested in the Digital Archivist position.

44. On or about the evening of June 17, 2016, Friedrich invited Eke to her office for a discussion. When Eke showed up to her office, Friedrich said, "I hear you are interested in the [Digital Archivist] position." Eke told her he was not interested in it.

45. Once again, Friedrich stated, "[Eke], Martine really loves you and will like for you to try out the position." This made Eke scared and confused.

46. Noticing that [Eke] looked "uneasy," Friedrich stated, "How about this—I will speak to Shola and ask him to save your position in IT. Then you can try out the [Digital Archivist] position. If after 90 days it doesn't work out for you or Martine, you can return to your IT position." Eke told her he would think about it.

47. Moments after Eke left Friedrich's office, Daye approached him and stated, "[Eke], why are you acting so special? Dude, Martine loves you! Do not come in on Monday and let me find out that you haven't applied for the position."

48. On or about June 18, 2016, Jenesis told Eke, "Last night I was having dinner with my parents and Martine asked me – 'Jenesis, you're still single. Why won't you date [Eke]."

49. Eke finally applied for the Digital Archive position on Monday, June 20, 2016 around 1:00 am.

50. The same morning on June 20, 2016, at approximately 8:57 am, Day asked Eke about if he had made a decision about the position.

51. Days later Eke was interviewed and effectively transferred on August 1, 2016.

52. At various times during his tenure in the new position, Eke was subject to terms and conditions outside of his job duties. On or about September 23, 2016, while at work, Jenesis

called Eke and ordered him to pick her up from her home and drive her to the hospital. Eke told her he couldn't do it since he could not leave the office during work hours. Also, the tasks were outside of his job responsibilities.

53. Roughly 5 minutes after Jenesis's phone call to Eke, Robert Daye called him and instructed him to do as Jenesis had ordered. Daye instructed Eke to leave the work site and pick up Jenesis from the hospital. Daye further stated that Eke was to do *whatever* Jenesis instructed. Daye stated that Eke was "automatically approved" for leave and that Eke should attend to Jenesis' every need.

54. Jenesis continued to exercise substantial influence over Eke's role. She constantly supervised him while in the new position. And she continued to make unwanted sexual advances toward Eke on a daily basis.

**Billy Jean King Gala**
**(New York City, New York – November 2016)**

55. In November 2016, Jenesis sent Eke an invitation to the Billie Jean King Leadership Initiative. Upon receiving the invitation, Eke asked Daye about other invitees.

56. Given Jenesis' relentless sexual advances, Eke asked Daye if he could book his hotel separately. Daye said "yes" and requested that Eke book it close to the host hotel. But before Eke could complete his reservation, Jenesis instructed him to reserve a room in the same hotel she booked. Eke declined and told her that Daye stated that Eke could book the hotel of his choosing.

57. Just minutes after Eke refused to leave with Jenesis, Daye called Eke and told him to book his hotel at the same venue as Jenesis. Eke had no choice but to comply.

58. The first day of the event, Eke dined with Martine Rothblatt, her wife Bina, Jenesis, Robert Daye, and another human resources officer named Beth Eritano.

59. Barely 10 minutes into the dinner, Jenesis said she was going out for a "smoke break" and asked if Eke wanted to come along. Eke declined.

60. Moments later, Jenesis announced to the table that she was leaving and invited Eke to come with her. Eke refused, telling her that he wanted to enjoy the dinner.

61. Visibly annoyed, Jenesis walked away from the table. Minutes later, Daye received a text message from Jenesis. Daye looked at Eke. Daye told Eke that he "must" leave when Jenesis leaves. Eke complied and left the event when Jenesis came back.

62. Upon returning to the hotel, Jenesis invited Eke to her room for a drink.

63. Eke did not want to go to Jenesis' room. Still, he was scared of what she would do if he refused, so he told her come to her room later.

64. Eventually, Eke went to Jenesis' room; however, he called a nearby friend to come to her room and rescue him from her. When the friend arrived to rescue Eke, Jenesis became enraged.

65. After that Eke did everything in his power to avoid Jenesis. When he returned from Christmas vacation in December 2016, Jenesis texted him on three separate occasions, asking if she could come to his home and have sex with him. Eke declined each time.

66. Then, one Wednesday in January 2017, Friedrich called Eke into her office to tell him that he was fired. Eke asked why. Friedrich told him that the termination was not performance-related. Eke asked if he could return to his IT position as Friedrich had promised. Jenesis Rothblatt played a substantial role in the termination decision. Eke was terminated on January 4, 2017.

**UT Senior Officials Threaten Eke Into Signing A Separation Agreement**

67. After firing Eke in her office, Friedrich sent him a separation agreement that very same day.

68. CIO Shola Oyewole called Eke numerous times to find out if Eke planned to seek legal representation.

69. Around the same time, Oyewole paid Eke a home visit one evening. He told Eke to sign the separation agreement, saying, "You don't know how dangerous these people can be. By the time they are done with you, you won't be able to find work in Maryland again." Oyewole also advised Eke to "leave his apartment" if he didn't sign the severance agreement. He warned: "The Rothblatts are very dangerous."

70. Around the same time, another UT employee, Timothy Atolagbe, advised Eke to "leave his apartment" and move away from Silver Spring, Maryland to avoid physical harm.

71. On January 21, 2017, Oyewole invited Eke and Eke's brother to dinner. Oyewole again urged Eke to sign the severance agreement. He repeated the warning he had given Eke before: "By the time they are done with you, you won't even be able to find another job in Maryland. You will drown in legal fees. These people are very powerful and dangerous."

72. Eke was overwhelmed with fear. He felt threatened for his life and believed he had no choice but to sign the separation agreement. As a result, he signed it.

**Previous Sexual Advances Made by Jenesis Rothblatt Against Male Employees Resulted in Swift Termination**

64. Eke is not Jenesis Rothblatt's first victim. Eke knows of at least 2 other male employees that were abruptly terminated because they rejected Jenesis' relentless sexual advances.

**<u>CAUSES OF ACTION</u>**

**Plaintiff's Claims Against United Therapeutics**

**COUNT 1: Hostile Work Environment Based on Sex**
**(Maryland Fair Employment Practices Act)**
**Title VII of the Civil Rights Act of 1964**

*73.* Plaintiff incorporates all paragraphs herein *seriatim.*

74. Defendant, by and through, its agents or supervisors, unlawfully subjected plaintiff to severe or pervasive treatment because of his sex.

75. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**COUNT 2: Quid Pro Quo Sexual Harassment**
**(Maryland Fair Employment Practices Act)**
**Title VII of the Civil Rights Act of 1964**

76. Plaintiff incorporates all paragraphs herein *seriatim*.

77. UT subjected Plaintiff to quid pro quo sexual harassment because Jenesis Rothblatt punished him for refusing to sleep with her by, among other things, persisting with her unwelcome requests for sex and then influencing the decision to terminate Plaintiff's employment.

78. UT is vicariously liable for the actions of UT management employee involved in the decision to terminate Plaintiff's employment.

79. UT has directly and proximately caused Plaintiff substantial economic loss, humiliation, pain, and suffering.

80. UT's actions were wanton, reckless, or in willful indifference to Plaintiff's statutory rights.

81. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**COUNT 3: Sex Discrimination**
**(Maryland Fair Employment Practices Act)**
**Title VII Civil Rights Act of 1964**

*82.* Plaintiff incorporates all paragraphs herein *seriatim.*

83. Defendant, by and through, its agents or supervisors, unlawfully terminated Plaintiff because of his sex.

84. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Plaintiff's Claims Against Jenesis Rothblatt**

**COUNT 4: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts**
**(Maryland Fair Employment Practices Act, § 20-801)**

*85.* Plaintiff incorporates all paragraphs herein *seriatim.*

86. Defendant aided and abetted the discriminatory practices against Plaintiff. As a result, Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently terminated.

87. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Plaintiff's Claims Against Shola Oyewole**

**COUNT 5: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts**
**(Maryland Fair Employment Practices Act, § 20-801)**

*88.* Plaintiff incorporates all paragraphs herein *seriatim.*

89. Defendant aided and abetted the discriminatory practices against Plaintiff. As a result, Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently terminated.

90. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Plaintiff's Claims Against Robert Daye**

**COUNT 6: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts (Maryland Fair Employment Practices Act, § 20-801)**

*91.* Plaintiff incorporates all paragraphs herein *seriatim.*

92. Defendant aided and abetted the discriminatory practices against Plaintiff. As a result, Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently terminated.

93. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Plaintiff's Claims Against Martine Rothblatt**

**COUNT 7: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts (Maryland Fair Employment Practices Act, § 20-801)**

*94.* Plaintiff incorporates all paragraphs herein *seriatim.*

95. Defendant aided and abetted the discriminatory practices against Plaintiff. As a result, Plaintiff

was subjected to a change in terms and conditions of his employment, and subsequently terminated.

96. Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**PRAYER FOR RELIEF**
**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal, and punitive), expenses, attorney's fees, and for such other and further relief as may be just and proper.

Dated: July 24, 2019

By: */s/Ikechukwu Emejuru*

Ikechukwu "Ike" Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: 1-800-250-7923
iemejuru@emejurulaw.com

Onyebuchim "Onye" Chinwah
**The Chinwah Firm LLC**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: 240.638.2738
oc@thechinwahfirm.com

Andrew Nyombi
**KNA Pearl L.L.C.**
8701 Georgia Avenue
Suite 606
Silver Spring, MD 20910

Telephone: (301) 585-1568
Facsimile: 1-800-250-7923
anyombi@enylaw.com

*ATTORNEYS FOR PLAINTIFF MARK EKE*