IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARK EKE,<br><br>             Plaintiff,<br><br>v.<br><br>UNITED THERAPEUTICS, et. al.,<br><br>             Defendants. | Civil Action No. 8:18-cv-2941 |

**INITIAL JOINT STATUS REPORT**

Plaintiff Mark Eke and Defendants, United Therapeutics Corporation, Jenesis Rothblatt, Martine Rothblatt, Robert Daye and Shola Oyewole, by and through undersigned counsel, provide the following Initial Joint Status Report pursuant to the Court's September 18, 2019 Scheduling Order:

**I.**     **Requests for Modification to Scheduling Order**

Defendants' Position: Plaintiff is a former employee of United Therapeutics Corporation ("UT") who was separated from his employment in January 2017.  Thereafter, Plaintiff negotiated and signed a Separation Agreement ("Agreement") which provided him with a substantial monetary payment in exchange for a full release and waiver of any and all claims he may have had against UT, as well as all officers and employees of the company.  Now, after having received the full benefit of this Agreement – including the receipt of $39,000 – Plaintiff seeks to ignore the binding release of claims he knowingly and voluntarily agreed to and has brought forward two conclusory assertions of "duress" (Am. Compl. at ¶¶ 69-70) as means of nullifying this Agreement and renegotiating a better deal using the prospect of intrusive, embarrassing, and expensive discovery into his dubious claims of sexual harassment and discrimination.

As discussed at length during the Court's July 10, 2019 hearing regarding their Motion to Dismiss, Defendants believe that bifurcation is necessary in this case at both the discovery and trial phase to expeditiously dispose of the threshold matter of Plaintiff's release and waiver of the claims at issue and to avoid substantial prejudice to Defendants by (1) depriving them of the benefit of the bargain of the Agreement – namely, the release of claims Defendants provided considerable remuneration for in order to move on from a position elimination without worry of potential baseless legal claims and unnecessary litigation expense; and (2) exposing a jury to

evidence that Defendants were willing to settle or pay money for a release of claims (which is traditionally excluded under Fed. R. Evid. 408) and injecting unfairly prejudicial events wholly unrelated to the threshold question of whether the Agreement constitutes a knowing and voluntary release of claims.  As a result, bifurcation of discovery (and ultimately trial if necessary) is appropriate under Fed. R. Civ. Pro. 42(b) "for convenience, to avoid prejudice, [and] to expedite and economize" these proceedings.  *See Cann v. Baltimore County, Md.*, 2011 WL 588343, at *1 (D. Md. Feb 9, 2011)("although Rule 42 does not expressly address the bifurcation of discovery, courts have looked to similar factors as those relevant to the bifurcation of trial when determining whether discovery related to the deferred claims should be stayed.").

In the event that the Court requires further argument on the necessity and propriety of bifurcation, Defendants would welcome the opportunity to fully brief this issue for the Court. Defendants can offer multiple examples demonstrating where federal courts have ordered bifurcated discovery and/or trials to dispose of preliminary matters and/or involve circumstances factually similar to those at issue here.  *See e.g. John Doe No. 1 v. Knights of Columbus*, 930 F.Supp.2d 337 (D. Conn. 2013)(ordering bifurcation of discovery and trial regarding threshold issue of whether plaintiff could establish fraudulent inducement to invalidate otherwise valid release of claims which would be dispositive of entire action, particularly given the discrete facts and witnesses at issue and in light of the undue prejudice defendant would face in having a jury unduly influenced in their initial determination regarding the validity of the signed release through simultaneous presentation of testimony regarding underlying negligence claims involving sexual abuse).  Likewise, Defendants can readily distinguish the cases cited by Plaintiff which are completely inapposite the facts and circumstances at issue in this case. *Treadwell v. Prince George's Cnty. Health Dep't*, Civil Action No. DKC 13-0063 (D. Md. Jun. 13, 2014)(denying motion to bifurcate claims against individual employee under 42 U.S.C. § 1983 where ruling in favor of individual employee would not be dispositive of entire action against county); *Taylor v. Northrop Grumman Sys. Corp.*, CIVIL No. JKB-13-1832 (D. Md. Sep. 5, 2013)(granting motion to dismiss in favor of employer without need for discovery or trial on issue of whether there was duress in signing separation agreement).

In this instance, the following factors weigh heavily in favor of bifurcation of all phases of this case: (1) a determination of whether Plaintiff can satisfy his burden of demonstrating "duress" to invalidate his Agreement and release of claims is potentially dispositive of the *entire case*; (2) bifurcated or "phased" discovery regarding the threshold issue of duress and the validity of this Agreement would be limited to what allegedly took place during a three-week time period in January 2017 and would primarily involve alleged conversations between Plaintiff and two other individuals (Am. Compl. at ¶¶ 69-70) and require no more than 60 days of discovery followed by an expedited briefing schedule for summary judgment; (3) permitting Plaintiff full discovery, in contrast, would involve a separate and complex set of facts regarding salacious allegations of purported sexual advances spanning nearly two years, requiring dozens of depositions, substantial written and electronic discovery, followed by lengthy expert discovery regarding Plaintiff's purported damages and would not be in the interests of judicial economy; and (4) ultimately if this case were not bifurcated, Defendants would be unfairly prejudiced by requiring the jury to rule on the threshold issue of whether the underlying claims should have been heard at all given the release of claims Plaintiff signed as part of the Agreement while

simultaneously being exposed to evidence of alleged sexual advances between Plaintiff and his purported "supervisor".

Accordingly, Defendants respectfully request a bifurcated or "phased" discovery with Phase I limited to 60 days of expedited written discovery and depositions (no more than 3 per side), followed by 30 days for filing and briefing dispositive motions – all limited to the threshold issue of whether Plaintiff's release of claims in the Agreement was knowing and voluntary or whether the release should be nullified based on "duress". Should dispositive motion(s) be denied, Defendants can be ready for a Phase I trial within 30 days thereafter. In total, Phase I would potentially last no more than 3-4 months and a ruling on this threshold issue may ultimately resolve the case, or in the alternative, substantially advance the prospects for a mutual resolution.

Should the case survive and proceed to Phase II, or in the alternative should the Court deny bifurcation, Defendants would request a 4 month discovery period (fact and expert), followed by 60 days for dispositive motion(s).

Plaintiff's Position: To start, this Court has tested the legal sufficiency of Eke's operative complaint and is satisfied that the allegations—including those about signing the separation agreement under duress caused by Defendants' unlawful misconduct—are not frivolous. As the Court noted during the July 2019 motions hearing, subjecting Plaintiff to a bifurcated discovery pattern starting with a first phase exploring the sole issue of duress would not be productive, because Eke would merely regurgitate the allegations plead into his complaint and Defendants would likely spend much of the proceedings asking Eke the same questions over again, just to try to achieve a different result.

Second, Plaintiff is a former employee of United Therapeutics Corporation ("UT") who was terminated from his employment in January 2017. Plaintiff was terminated when Defendant Jessica Rothblatt, the daughter of United Therapeutics CEO Martine Rothblatt, engineered the decision to fire Mark Eke simply because he refused her sexual advances. Plaintiff alleges that UT's Senior Official Shola Oyewole knew about the sexual advancements by Rothblatt because he pressured Eke into taking a position that would be overseen Jenesis Rothblatt (Am. ¶37). Oyewole is also the same individual who pressured Eke into signing a separation agreement by threatening his life. (Am. ¶67-72). Thus, the actions of duress from Oyewole are synchronized to Eke's Title VII/MFEPA claims. In other words, an understanding of the facts surrounding the sexual harassment leading to Oyewole pressuring Eke to sign the separation agreement, must be considered simultaneously. *See Treadwell v. Prince George's Cnty. Health Dep't*, Civil Action No. DKC 13-0063 (D. Md. Jun. 13, 2014)

In *Treadwell*, Judge Chassanow denied the Defendant's motion to bifurcate because the sexual harassment allegations against the individual defendant were intertwined with the Plaintiff's allegations against the Defendant. The court found that the Defendant failed to prove that it was an "inactive defendant," liable only if the Plaintiff could prove separate claims. *Treadwell* is persuasive in this case because UT, nor any other individual defendant, can prove that it would be an "inactive defendant... if [Eke]...proves that [Oyewole] [pressured him into signing a separation agreement]. Indeed, all of the acts surrounding Oyewole (and the

other UT associate) would undoubtedly involve discovery into the sexual harassment allegations against all of the individual defendants, who have separate claims for "aiding and abetting" under Maryland law.

Third, Granting Defendants' bifurcation request would cause Eke undue prejudice because it would deprive him of the opportunity, through discovery, to uncover evidence about the full extent of Oyewole's involvement and how the actions of Oyewole and the other defendants worked together to violate Eke's Title VII and FEPA rights. Because all the allegations contained in the complaint overlap, bifurcating discovery in "phases" will most certainly result in [more than minimal] duplication of evidence. *See White Chemical Corporation v. Walsh Chemical Corp.*, 116 F.R.D. 580, *582 (W.D.N.C. 1987)(denying motion to bifurcate discovery into "phases," but granting the motion bifurcate trial due to minimal evidentiary overlap) Moreover, separating discovery into phases would "result in added judicial involvement into objections, motions to compel, and the like." *Id.*

Fourth, unlike the Defendants in this case, Plaintiff does not have endless resources at his disposal. As this matter is already headed into the second year of litigation, further extending this case into discovery phases would be prejudicial and "unduly extend the final disposition of this case." *H.B. Fuller Co. v. National Starch & Chemical Corp.,* 595 F. Supp. 622, 625, 225 U.S.P.Q. (BNA) 436 (D. Del. 1984). Similarly, in *Laitram*, the court held that "separate juries, separate trials, and separate discovery phases would unduly prejudice plaintiff by unreasonably delaying the end of this case." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, *116 (E.D. La. 1992). Moreover, plaintiff would have to incur the additional expense of obtaining and presenting evidence and witnesses twice, a result not equitable between the parties in this case.

Finally, courts recognize that there is no single 'best' way to structure discovery and trial of a claim. "Each case must be considered in light of its particular facts and circumstances." *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991); see also *Estate of Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 665 (S.D. Ohio 2004) ("[A]ny decision ordering or denying bifurcation is dependent on the facts and circumstances of each case."), aff'd, 414 F.3d 596 (6th Cir. 2005). The Court must consider the complexity of the particular case in deciding whether bifurcation is appropriate and should not order bifurcation where the damages issues are not unusually complex. *Brad Ragan*, 89 F.R.D. at 550. This is so even if the issues are complex. *Id*. Here, bifurcation is unwarranted because the issues of duress and discrimination in employment are not unusually complex or distinct. *See Taylor v. Northrop Grumman Sys. Corp.*, CIVIL No. JKB-13-1832 (D. Md. Sep. 5, 2013)(involving age discrimination and a separation agreement involving an issue of duress).

## II.     Report on Consent to Proceed Before a United States Magistrate Judge

The Parties do not unanimously consent to proceed before a United States Magistrate Judge in this matter.

### III.     Report on Mediation with a United States Magistrate Judge

The Parties believe it is premature to discuss mediation at this time, but will continue to communicate informally and will notify the Court they believe mediation with a United States Magistrate Judge would be beneficial.

### IV.     Report on the Scope of Discovery

<u>Defendant's Position</u>: *See* Section I above.  The Parties do not agree regarding the appropriate nature and extent of discovery of this case.  If the Court is not inclined to grant bifurcation on solely the grounds stated herein, Defendants request full briefing on its request to bifurcate discovery and/or trial before the commencement of discovery.

<u>Plaintiff's Position</u>:  In light of Defendant's greater access to discovery, it is plaintiff's position that United Therapeutics: (1) stipulate to no fewer than 30 interrogatories; (2) stipulate to no fewer than 30 deposition hours for nonexpert witnesses; (3) stipulate to exchanging all discovery by email or some other mutually agreed upon electronic means; and (4) stipulate to sending discovery requests in PDF and Word.

| | |
|---|---|
| */s/ Ike K. Emejuru (with approval)*<br>Ikechukwu K. Emejuru<br>**EMEJURU LAW, LLC**<br>8403 Colesville Road, Suite 1100<br>Silver Spring, MD 20910<br>(240) 683-2786 (telephone)<br>iemejuru@emejurulaw.com<br><br>Andrew Nyombi<br>**KNA PEARL**<br>8701 Georgia Avenue<br>Suite 606<br>Silver Spring, MD 20910<br>(301) 585-1568<br>anyombi@knapearl.com<br><br>Onyebuchim Aduire Chinwah<br>**The Chinwah Firm LLC**<br>8403 Colesville Road<br>Suite 1100<br>Silver Spring, MD 20910<br>oc@chinwahfirm.com<br><br>*Attorneys for Plaintiff Mark Eke* | */s/ Eric J. Janson*<br>Eric J. Janson<br>Christine M. Costantino<br>**SEYFARTH SHAW LLP**<br>975 F Street, N.W.<br>Washington, D.C. 20004<br>(202) 463-2400 (telephone)<br>(202) 828-5393 (facsimile)<br>ejanson@seyfarth.com<br>cocostantino@seyfarth.com<br><br>*Attorneys for Defendants* |

59450018v.1

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2019, a copy of the Initial Joint Status Report was filed electronically using CM/ECF to the following:

Ikechukwu K Emejuru
Emejuru Law LLC
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910

Andrew Nyombi
KNA PEARL
8701 Georgia Avenue
Suite 606
Silver Spring, MD 20910

Onyebuchim Aduire Chinwah
The Chinwah Firm LLC
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910

/s/  Eric J. Janson