## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK EKE,

              Plaintiff,

     v.

UNITED THERAPEUTICS, et. al.,

              Defendants.

Civil Action No. 8:18-cv-2941

## AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT

Defendants, United Therapeutics Corporation, Jenesis Rothblatt, Martine Rothblatt, Robert Daye and Shola Oyewole, by and through undersigned counsel, provide the forgoing Amended Answer and Counterclaims to Plaintiff Mark Eke's ("Eke") Amended Complaint ("Complaint") and state as follows:

## PRELIMINARY STATEMENT

### COMPLAINT ¶1:

This case is about the wielding of corporate power gone wild. Jessica [sic] Rothblatt, the daughter of United Therapeutics CEO Martine Rothblatt, engineered the decision to fire Mark Eke simply because he refused to sleep with her. As if that were not enough, Defendants then pressured Mark Eke into signing a separation agreement by threatening his life. As a result, Defendants violated Title VII of the Civil Rights Act of 1964, the Maryland Fair Employment Practices Act and Maryland common law.

### ANSWER:

Defendants deny the allegations in Paragraph 1 of the Complaint, including that Jenesis Rothblatt engaged in any unwanted sexual advances towards Eke, played any role in Eke's separation or that Eke was pressured in any way to sign his separation agreement. Indeed, Eke's

specious allegations are nothing more than a thinly veiled attempt to renegotiate the terms of the separation agreement he knowingly and freely entered into.

## JURISDICTION

**COMPLAINT ¶2:**

Jurisdiction is proper pursuant to Section 1-501 and 6-102 of the Courts and Judicial Proceedings article of the Maryland Code Annotated, among other applicable provisions.

**ANSWER:**

The allegations contained in Paragraph 2 of the Complaint are conclusions of law or mixed conclusions of law and fact to which no answer is required. To the extent an answer is required, Defendants deny the allegations in the Paragraph 2.

**COMPLAINT ¶3:**

Plaintiff Mark Eke has exhausted his administrative remedies with the Equal Employment Opportunity Commission and Montgomery County Human Rights Commission.

**ANSWER:**

The allegations contained in Paragraph 3 of the Complaint are conclusions of law or mixed conclusions of law and fact to which no answer is required. To the extent an answer is required, Defendants deny the allegations in the Paragraph 3, including that Plaintiff properly exhausted his administrative remedies.

## VENUE

**COMPLAINT ¶4:**

Venue is proper because this action arises from events that occurred in Montgomery County, Defendant UT is located in Montgomery County, and Defendant UT does business in Montgomery County.

**ANSWER:**

The allegations contained in Paragraph 4 of the Complaint are conclusions of law or mixed conclusions of law and fact to which no answer is required. To the extent an answer is required, Defendants deny the allegations in the Paragraph 4.

## PARTIES

**COMPLAINT ¶5:**

Plaintiff Mark Eke is a natural person and resident of the State of Maryland.

**ANSWER:**

Defendants are without knowledge or information sufficient to admit or deny, and thus deny, the allegations in Paragraph 5 of the Complaint.

**COMPLAINT ¶6:**

Defendant United Therapeutics is an employer and regularly conducts business within the State of Maryland.

**ANSWER:**

Defendants admit the allegations in Paragraph 6 of the Complaint.

**COMPLAINT ¶7:**

United Therapeutics (UT) is a Silver Spring, Maryland-based biotechnology company founded by Ms. Martine Rothblatt. It represents the culmination of her efforts to find a cure for her daughter Jenesis Rothblatt, who at a young age was diagnosed with pulmonary arterial hypertension.

**ANSWER:**

Defendants admit that it United Therapeutics Corporation (UT) is a biotechnology company founded by Martine Rothblatt. Defendants deny the remaining denies the allegations in the Paragraph 7 of the Complaint as stated.

**COMPLAINT ¶8:**

Martine Rothblatt is UT's Chief Executive Officer.

**ANSWER:**

Defendants admit the allegations in Paragraph 8 of the Complaint.

**COMPLAINT ¶9:**

Jenesis Rothblatt is a UT senior executive. She works under Martine Rothblatt's supervision.

**ANSWER:**

Defendants deny the allegations in Paragraph 9 of the Complaint as stated.

**COMPLAINT ¶10:**

Other senior UT officials germane to this action are Mr. Shola Oyewole, Chief Information Officer; Mr. Robert Daye, Senior Manager of the Office of the Chairman; Ms. Alyssa Friedrich, VP of Human Resources; and Mr. Timothy Atolagbe, Senior Process Development Scientist.

**ANSWER:**

Defendants deny the allegations in Paragraph 10 of the Complaint as stated.

**COMPLAINT ¶11:**

At the age of 27, Mark Eke was hired by United Therapeutics on May 6, 2013 to work in the Information Technology Department. His supervisor was Shola Oyewole.

**ANSWER:**

Defendants admit that Mark Eke started his employment with United Therapeutics in

May 2013 as a Lead Senior System Administrator. Defendants deny the remaining allegations in

Paragraph 11 of the Complaint as stated.

**COMPLAINT ¶12:**

Eke worked as a Lead Senior Systems Administrator from May 2013 to March 2015. He was promoted to Systems Engineer II in March 2015 and stayed in the position until January 2017. He also provisionally worked as a Digital Archivist/Wikipedia Editor from August 2016 until UT terminated his employment in January 2017.

**ANSWER:**

Defendants admits that Eke worked as a Systems Engineer and took a Digital Archivist position in approximately February 2016. Defendants further admit that Eke was terminated from his employment in January 2017. Defendants deny the remaining allegations in Paragraph 12 of the Complaint as stated.

**COMPLAINT ¶13:**

Eke was well recognized for his accomplishments at UT. In fact, in 2014, Eke became the first person in the Information Technology Department to receive the "UT Key Contributor Award." As a result, he was quickly promoted to the Systems Engineer II position in March 2015 and then to the Digital Archivist position in 2016.

**ANSWER:**

Defendants deny the allegations in Paragraph 13 of the Complaint as stated.

**COMPLAINT ¶14:**

Eke was also highly regarded by the CEO Martine Rothblatt. She considered Eke to be one of the best employees at UT.

**ANSWER:**

Defendants deny the allegations in Paragraph 14 of the Complaint.

**COMPLAINT ¶15:**

On a company trip to Las Vegas, Nevada for a Lung Biotechnology national sales meeting, Eke arrived a day early with his team members. After dinner that day, most of the staff were out on the casino floor, sharing drinks and walking around. Eke sat a poker table with fellow employees. Jenesis, accompanied by a friend, showed up at the same poker table.

**ANSWER:**

Defendants deny the allegations in Paragraph 15 of the Complaint.

**COMPLAINT ¶16:**

Eke announced that he was retiring for the night and that he was returning to his hotel room. As Eke walked back to his hotel room, Jenesis left the poker table and began to walk beside Eke. Along the way, Jenesis' friend told her she was walking in the wrong direction. Jenesis told her friend that she would walk with Eke and then meet up with her later.

**ANSWER:**

Defendants deny the allegations in Paragraph 16 of the Complaint.

**COMPLAINT ¶17:**

Jenesis followed Eke into his hotel room.  She attempted to hug him.  But Eke refused to hug her.  He told her he was tired and needed to sleep.

**ANSWER:**

Defendants deny the allegations in Paragraph 17 of the Complaint.

**COMPLAINT ¶18:**

Eke wanted to tell Jenesis to leave but was scared of what could happen to him and his job if he refused her advances.  So he lay in his bed with his clothes on and pretended to sleep.  Without Eke's consent, Jenesis climbed into Eke's bed.  She lay there for a while.  Then she left Eke's room. S

**ANSWER:**

Defendants deny the allegations in Paragraph 18 of the Complaint.

**COMPLAINT ¶19:**

Eke reported the incident to other employees within the company.

**ANSWER:**

Defendants deny the allegations in Paragraph 19 of the Complaint.

**COMPLAINT ¶20:**

Around April 2015, after the Las Vegas incident, Jenesis showed up unannounced at Eke's apartment in Silver Spring, MD.  Eke lived directly across the street from United Therapeutics.

**ANSWER:**

Defendants deny the allegations in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

Jenesis sat with Eke in his living room after he let her in.  Soon afterward, she stood up and walked into Eke's bedroom.  Eke thought she needed to use his bathroom.

**ANSWER:**

Defendants deny the allegations in Paragraph 21 of the Complaint.

**COMPLAINT ¶22:**

However, moments later, Jenesis returned to the living room naked. Eke was too shocked to talk. Jenesis got angry and demanded that he explain his silence. She taunted him for thinking he was "so special" and too good for her.

**ANSWER:**

Defendants deny the allegations in Paragraph 22 of the Complaint, including that Jenesis

Rothblatt made any unwanted sexual advances towards Eke.

**COMPLAINT ¶23:**

Eke insisted that Jenesis to put her clothes back on. Ignoring his request, Jenesis pressed herself against Eke and cooed, "Don't you find me attractive?" Eke begged her to put her clothes back on. He reminded her that they worked together and stressed that she was the daughter of Martine Rothblatt, the CEO.

**ANSWER:**

Defendants deny the allegations in Paragraph 23 of the Complaint, including that Jenesis

Rothblatt made any unwanted sexual advances towards Eke.

**COMPLAINT ¶24:**

Eke continued trying to reason with Jenesis. He told her that he "loved his job" and that they were "just friends" and that he did not want to be sexually involved with her. Jenesis replied, "I am Jenesis Rothblatt. No one has to know about this moment."

**ANSWER:**

Defendants deny the allegations in Paragraph 24 of the Complaint.

**COMPLAINT ¶25:**

When Jenesis realized that Eke would not have sex with her, she glared at him and put her clothes back on.

**ANSWER:**

Defendants deny the allegations in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

The next morning, Eke woke up to a series of text messages Jenesis had sent him earlier that morning. She told Eke she was furious with him for rejecting her sexual advances. Eke grew worried.

**ANSWER:**

Defendants deny the allegations in Paragraph 26 of the Complaint, including that Jenesis

Rothblatt made any unwanted sexual advances towards Eke.

**COMPLAINT ¶27:**

When Eke got to work that day, he could not concentrate on his job duties. He kept wondering whether he would get fired for rejecting Jenesis Rothblatt's sexual advances.

**ANSWER:**

Defendants deny the allegations in Paragraph 27 of the Complaint, including that Jenesis

Rothblatt made any unwanted sexual advances towards Eke.

**COMPLAINT ¶28:**

Eke reported the incident to other employees within the company.

**ANSWER:**

Defendants deny the allegations in Paragraph 28 of the Complaint.

**COMPLAINT ¶29:**

Because of Jenesis' reaction in his apartment and her furious text messages, Eke could not stop worrying about whether his refusal to sleep with her would cost him his job. As a result, he suffered anxiety and insomnia.

**ANSWER:**

Defendants deny the allegations in Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

In February 2016, a position for "Digital Archivist" was announced. The position was in the Office of the Chairman (OOC).

**ANSWER:**

Defendants admit that a position for Digital Archivist was announced in approximately February 2016. Defendants deny the remaining allegations of Paragraph 30 of the Complaint as stated.

**COMPLAINT ¶31:**

The position would report directly to Jenesis Rothblatt, who then was Senior Manager for the "Digital Signage" department. She was also the sole member of the digital team.

**ANSWER:**

Defendants deny the allegations in Paragraph 31 of the Complaint, including that Mark Eke or the Digital Archivist position reported directly to Jenesis Rothblatt.

**COMPLAINT ¶32:**

Around February 3, 2016, Jenesis texted Eke a picture with sexually explicit language. The picture said, "Fuck Humpday! I want to know when Fuck-me-so-hard-I-can't-walk day is." This made Eke worry even more about his job security.

**ANSWER:**

Defendants deny the allegations in Paragraph 32 of the Complaint as stated.

**COMPLAINT ¶33:**

On or about June 2017, Eke assisted Jenesis with a task associated with the new Digital Archivist position. Eke also assisted her with a "Wikipedia" associated task. Jenesis then asked Eke to apply for the Digital Archivist position.

**ANSWER:**

Defendants deny the allegations in Paragraph 32 of the Complaint.

**COMPLAINT ¶34:**

Eke declined because it had nothing to do with IT, his area of expertise, because he did not want to give Jenesis additional opportunities to pressure him for sex.

**ANSWER:**

Defendants deny the allegations in Paragraph 34 of the Complaint, including that Jenesis

Rothblatt ever pressured Mark Eke for sex or otherwise made unwanted sexual advances towards

him.

**COMPLAINT ¶35:**

Jenesis had the position changed by adding "Wikipedia Editor" to it. The position was changed in or about June 2017.

**ANSWER:**

Defendants deny the allegations in Paragraph 35 of the Complaint.

**COMPLAINT ¶36:**

Jenesis once again asked Eke to apply for the position. But Eke declined.

**ANSWER:**

Defendants deny the allegations in Paragraph 36 of the Complaint.

**COMPLAINT ¶37:**

Eke consulted with Chief Information Officer Shola Oyewole about the position. Oyewole told him, "You will be working for Jenesis, not Martine." Oyewole also advised him not to consider the position, because it was not beneficial to his "career goals."

**ANSWER:**

Defendants deny the allegations in Paragraph 37 of the Complaint.

**COMPLAINT ¶38:**

Understanding the position reported directly to Jenesis, Eke chose not to apply for it because Jenesis would not stop pressuring him for sex.

**ANSWER:**

Defendants deny the allegations in Paragraph 38 of the Complaint, including that Jenesis

Rothblatt ever pressured Mark Eke for sex or otherwise made unwanted sexual advances towards

him.

**COMPLAINT ¶39:**

From February 2016 to June 2016, Jenesis pressured Eke to take the Digital Archive position.

**ANSWER:**

Defendants deny the allegations in Paragraph 39 of the Complaint, including that Jenesis Rothblatt ever pressured Mark Eke for sex or otherwise made unwanted sexual advances towards him.

**COMPLAINT ¶40:**

Robert Daye and Alyssa Friedrich also told Eke to take the position.

**ANSWER:**

Defendants deny the allegations in Paragraph 40 of the Complaint as stated.

**COMPLAINT ¶41:**

On or about June 17, 2016, VP of Human Resources Alyssa Friedrich said to Eke, "Martine really loves you and will like for you to try out the position."

**ANSWER:**

Defendants deny the allegations in Paragraph 41 of the Complaint as stated.

**COMPLAINT ¶42:**

On or about June 17, 2016, Daye told Friedrich that Eke was interested in the position. Friedrich told Martine Rothblatt the same thing.

**ANSWER:**

Defendants admit that Eke expressed interest in the Digital Archivist position and communicated Eke's expression of interest to management. Defendants deny the remaining allegations in Paragraph 42 of the Complaint as stated.

**COMPLAINT ¶43:**

But that was untrue: Eke was not interested in the Digital Archivist position.

**ANSWER:**

Defendants deny the allegations in Paragraph 43 of the Complaint.

**COMPLAINT ¶44:**

On or about the evening of June 17, 2016, Friedrich invited Eke to her office for a discussion. When Eke showed up to her office, Friedrich said, "I hear you are interested in the [Digital Archivist] position." Eke told her he was not interested in it.

**ANSWER:**

Defendants deny the allegations in Paragraph 44 of the Complaint.

**COMPLAINT ¶45:**

Once again, Friedrich stated, "[Eke], Martine really loves you and will like for you to try out the position." This made Eke scared and confused.

**ANSWER:**

Defendants deny the allegations in Paragraph 45 of the Complaint.

**COMPLAINT ¶46:**

Noticing that [Eke] looked "uneasy," Friedrich stated, "How about this—I will speak to Shola and ask him to save your position in IT. Then you can try out the [Digital Archivist] position. If after 90 days it doesn't work out for you or Martine, you can return to your IT position." Eke told her he would think about it.

**ANSWER:**

Defendants deny the allegations in Paragraph 46 of the Complaint.

**COMPLAINT ¶47:**

Moments after Eke left Friedrich's office, Daye approached him and stated, "[Eke], why are you acting so special? Dude, Martine loves you! Do not come in on Monday and let me find out that you haven't applied for the position."

**ANSWER:**

Defendants deny the allegations in Paragraph 47 of the Complaint.

**COMPLAINT ¶48:**

On or about June 18, 2016, Jenesis told Eke, "Last night I was having dinner with my parents and Martine asked me — 'Jenesis, you're still single. Why won't you date [Eke].'"

**ANSWER:**

Defendants deny the allegations in Paragraph 48 of the Complaint.

**COMPLAINT ¶49:**

Eke finally applied for the Digital Archive position on Monday, June 20, 2016 around 1:00 am.

**ANSWER:**

Defendants admit that Eke applied for the Digital Archivist position. Defendants deny the remaining allegations in Paragraph 49 of the Complaint as stated.

**COMPLAINT ¶50:**

The same morning on June 20, 2016, at approximately 8:57 am, Day asked Eke about if he had made a decision about the position.

**ANSWER:**

Defendants deny the allegations in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

Days later Eke was interviewed and effectively transferred on August 1, 2016.

**ANSWER:**

Defendants admit that Eke was interviewed and selected for the Digital Archivist position that he expressed interest in and applied for. Defendants deny the remaining allegations in Paragraph 51 of the Complaint as stated.

**COMPLAINT ¶52:**

At various times during his tenure in the new position, Eke was subject to terms and conditions outside of his job duties. On or about September 23, 2016, while at work, Jenesis called Eke and ordered him to pick her up from her home and drive her to the hospital. Eke told her he couldn't do it since he could not leave the office during work hours. Also, the tasks were outside of his job responsibilities.

**ANSWER:**

Defendants deny the allegations in Paragraph 52 of the Complaint as stated.

**COMPLAINT ¶53:**

Roughly 5 minutes after Jenesis's phone call to Eke, Robert Daye called him and instructed him to do as Jenesis had ordered. Daye instructed Eke to leave the work site and pick up Jenesis from the hospital. Daye further stated that Eke was to do whatever Jenesis instructed. Daye stated that Eke was "automatically approved" for leave and that Eke should attend to Jenesis' every need.

**ANSWER:**

Defendants deny the allegations in Paragraph 53 of the Complaint as stated.

**COMPLAINT ¶54:**

Jenesis continued to exercise substantial influence over Eke's role. She constantly supervised him while in the new position. And she continued to make unwanted sexual advances toward Eke on a daily basis.

**ANSWER:**

Defendants deny the allegations in Paragraph 54 of the Complaint, including that Jenesis

was Eke's supervisor or ever exerted substantial influence over his position.

**COMPLAINT ¶55:**

In November 2016, Jenesis sent Eke an invitation to the Billie Jean King Leadership Initiative. Upon receiving the invitation, Eke asked Daye about other invitees.

**ANSWER:**

Defendants admit that Eke, among other individuals, was invited to the Billie Jean King

Leadership Initiative. Defendants deny the remaining allegations in Paragraph 55 of the

Complaint as stated.

**COMPLAINT ¶56:**

Given Jenesis' relentless sexual advances, Eke asked Daye if he could book his hotel separately. Daye said "yes" and requested that Eke book it close to the host hotel. But before Eke could complete his reservation, Jenesis instructed him to reserve a room in the same hotel she booked. Eke declined and told her that Daye stated that Eke could book the hotel of his choosing.

**ANSWER:**

Defendants deny the allegations in Paragraph 56 of the Complaint as stated, including that Jenesis Rothblatt ever made any unwanted sexual advances towards Eke.

**COMPLAINT ¶57:**

Just minutes after Eke refused to leave with Jenesis, Daye called Eke and told him to book his hotel at the same venue as Jenesis. Eke had no choice but to comply.

**ANSWER:**

Defendants deny the allegations in Paragraph 57 of the Complaint.

**COMPLAINT ¶58:**

The first day of the event, Eke dined with Martine Rothblatt, her wife Bina, Jenesis, Robert Daye, and another human resources officer named Beth Eritano.

**ANSWER:**

Defendants deny the allegations in Paragraph 58 of the Complaint.

**COMPLAINT ¶59:**

Barely 10 minutes into the dinner, Jenesis said she was going out for a "smoke break" and asked if Eke wanted to come along. Eke declined.

**ANSWER:**

Defendants deny the allegations in Paragraph 59 of the Complaint.

**COMPLAINT ¶60:**

Moments later, Jenesis announced to the table that she was leaving and invited Eke to come with her. Eke refused, telling her that he wanted to enjoy the dinner.

**ANSWER:**

Defendants deny the allegations in Paragraph 60 of the Complaint.

**COMPLAINT ¶61:**

Visibly annoyed, Jenesis walked away from the table. Minutes later, Daye received a text message from Jenesis. Daye looked at Eke. Daye told Eke that he "must" leave when Jenesis leaves. Eke complied and left the event when Jenesis came back.

**ANSWER:**

Defendants deny the allegations in Paragraph 61 of the Complaint.

**COMPLAINT ¶62:**

Upon returning to the hotel, Jenesis invited Eke to her room for a drink.

**ANSWER:**

Defendants deny the allegations in Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

Eke did not want to go to Jenesis' room.  Still, he was scared of what she would do if he refused, so he told her come to her room later.

**ANSWER:**

Defendants deny the allegations in Paragraph 63 of the Complaint.

**COMPLAINT ¶64:**

Eventually, Eke went to Jenesis' room; however, he called a nearby friend to come to her room and rescue him from her.  When the friend arrived to rescue Eke, Jenesis became enraged.

**ANSWER:**

Defendants deny the allegations in Paragraph 64 of the Complaint.

**COMPLAINT ¶65:**

After that Eke did everything in his power to avoid Jenesis.  When he returned from Christmas vacation in December 2016, Jenesis texted him on three separate occasions, asking if she could come to his home and have sex with him.  Eke declined each time.

**ANSWER:**

Defendants deny the allegations in Paragraph 65 of the Complaint.

**COMPLAINT ¶66:**

Then, one Wednesday in January 2017, Friedrich called Eke into her office to tell him that he was fired.  Eke asked why.  Friedrich told him that the termination was not performance-related.  Eke asked if he could return to his IT position as Friedrich had promised.  Jenesis Rothblatt played a substantial role in the termination decision.  Eke was terminated on January 4, 2017.

**ANSWER:**

Defendants admit that Eke was terminated from his position in January 2017.  Defendants deny the remaining allegations in Paragraph 66 of the Complaint, including that Freidrich ever promised he could return to his prior position and/or that Jenesis Rothblatt played any role in Eke's termination of employment.

**COMPLAINT ¶67:**

After firing Eke in her office, Friedrich sent him a separation agreement that very same day.

**ANSWER:**

Defendants admit that Eke was presented with a separation agreement in conjunction with his termination of employment.  Defendants deny the remaining allegations in Paragraph 67 of the Complaint as stated.

**COMPLAINT ¶68:**

CIO Shola Oyewole called Eke numerous times to find out if Eke planned to seek legal representation.

**ANSWER:**

Defendants deny the allegations in Paragraph 68 of the Complaint as stated.  By way of further response, Defendants admit that Eke was encouraged to seek legal representation to review the separation agreement he was given.

**COMPLAINT ¶69:**

Around the same time, Oyewole paid Eke a home visit one evening.  He told Eke to sign the separation agreement, saying, "You don't know how dangerous these people can be.  By the time they are done with you, you won't be able to find work in Maryland again."  Oyewole also advised Eke to "leave his apartment" if he didn't sign the severance agreement.  He warned: "The Rothblatts are very dangerous."

**ANSWER:**

Defendants deny the allegations in Paragraph 69 of the Complaint, including that

Oyewole ever made any of the statements that Eke attributes to him.

**COMPLAINT ¶70:**

Around the same time, another UT employee, Timothy Atolagbe, advised Eke to "leave his apartment" and move away from Silver Spring, Maryland to avoid physical harm.

**ANSWER:**

Defendants deny the allegations in Paragraph 70 of the Complaint, including that

Atolagbe ever made any of the statements that Eke attributes to him.

**COMPLAINT ¶71:**

On January 21, 2017, Oyewole invited Eke and Eke's brother to dinner. Oyewole again urged Eke to sign the severance agreement. He repeated the warning he had given Eke before: "By the time they are done with you, you won't even be able to find another job in Maryland. You will drown in legal fees. These people are very powerful and dangerous."

**ANSWER:**

Defendants admit that Oyewole had dinner with Eke and Eke's brother as they were

personal friends. Defendants deny the remaining allegations in Paragraph 71 of the Complaint,

including that Oyewole ever made any of the statements that Eke attributes to him.

**COMPLAINT ¶72:**

Eke was overwhelmed with fear. He felt threatened for his life and believed he had no choice but to sign the separation agreement. As a result, he signed it.

**ANSWER:**

Defendants deny the allegations in Paragraph 72 of the Complaint. By way of further

response, Defendants state that Eke had numerous written communications after this dinner

where he attempted to negotiate additional compensation in exchange for signing the separation

agreement. Eke ultimately signed this separation agreement days later on January 25, 2017 and

did so freely and knowingly and without any type of duress.

**COMPLAINT ¶64:** [sic]

Eke is not Jenesis Rothblatt's first victim. Eke knows of at least 2 other male employees that were abruptly terminated because they rejected Jenesis' relentless sexual advances.

**ANSWER:**

Defendants deny the allegations in Paragraph 64 of the Complaint.

## CAUSES OF ACTION

### Plaintiff's Claims Against United Therapeutics

### COUNT 1:  Hostile Work Environment Based on Sex
### (Maryland Fair Employment Practices Act)
### Title VII of the Civil Rights Act of 1964

**COMPLAINT ¶73:**

Plaintiff incorporates all paragraphs herein *seriatim*.

**ANSWER:**

Defendant United Therapeutics incorporates by reference its answers to Paragraphs 1-72 of the Complaint as if fully set forth herein.

**COMPLAINT ¶74:**

Defendant, by and through, its agents or supervisors, unlawfully subjected plaintiff to severe or pervasive treatment because of his sex.

**ANSWER:**

Defendant United Therapeutics denies the allegations in Paragraph 74 of the Complaint, including that Plaintiff was ever discriminated against based on his sex or any other protected category.

**COMPLAINT ¶75:**

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**ANSWER:**

Paragraph 75 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules.

**COUNT 2: Quid Pro Quo Sexual Harassment**
**(Maryland Fair Employment Practices Act)**
**Title VII of the Civil Rights Act of 1964**

**COMPLAINT ¶76:**

Plaintiff incorporates all paragraphs herein *seriatim*.

**ANSWER:**

Defendant United Therapeutics incorporates by reference its answers to Paragraphs 1-75

of the Complaint as if fully set forth herein.

**COMPLAINT ¶77:**

UT subjected Plaintiff to quid pro quo sexual harassment because Jenesis Rothblatt
punished him for refusing to sleep with her by, among other things, persisting with her
unwelcome requests for sex and then influencing the decision to terminate Plaintiff's
employment.

**ANSWER:**

Defendant United Therapeutics denies the allegations in Paragraph 77 of the Complaint,

including that Jenesis Rothblatt ever made unwelcome sexual advances towards Plaintiff or was

involved in Plaintiff's termination of employment.

**COMPLAINT ¶78:**

UT is vicariously liable for the actions of UT management employee involved in the
decision to terminate Plaintiff's employment.

**ANSWER:**

Defendant United Therapeutics denies the allegations in Paragraph 78 of the Complaint.

**COMPLAINT ¶79:**

UT has directly and proximately caused Plaintiff substantial economic loss, humiliation, pain, and suffering.

**ANSWER:**

Defendant United Therapeutics denies the allegations in Paragraph 79 of the Complaint.

**COMPLAINT ¶80:**

UT's actions were wanton, reckless, or in willful indifference to Plaintiff's statutory rights.

**ANSWER:**

Defendant United Therapeutics denies the allegations in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**ANSWER:**

Paragraph 81 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules

**COUNT 3: Sex Discrimination**
**(Maryland Fair Employment Practices Act)**
**Title VII Civil Rights Act of 1964**

## COMPLAINT ¶82:

Plaintiff incorporates all paragraphs herein *seriatim*.

## ANSWER:

Defendant United Therapeutics incorporates by reference its answers to Paragraphs 1-81

of the Complaint as if fully set forth herein.

## COMPLAINT ¶83:

Defendant, by and through, its agents or supervisors, unlawfully terminated Plaintiff because of his sex.

## ANSWER:

Defendant United Therapeutics denies the allegations in Paragraph 83 of the Complaint,

including that Plaintiff was ever discriminated against or terminated from his employment based

on his sex or any other reason,

## COMPLAINT ¶84:

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## ANSWER:

Paragraph 84 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules

**Plaintiff's Claims Against Jenesis Rothblatt**

**COUNT 4: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts
(Maryland Fair Employment Practices Act, § 20-801)**

<u>**COMPLAINT ¶85:**</u>

Plaintiff incorporates all paragraphs herein *seriatim*.

<u>**ANSWER:**</u>

Defendant Jenesis Rothblatt incorporates by reference the answers to Paragraphs 1-84 of

the Complaint as if fully set forth herein.

<u>**COMPLAINT ¶86:**</u>

Defendant aided and abetted the discriminatory practices against Plaintiff. As a result,
Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently
terminated.

<u>**ANSWER:**</u>

Defendant Jenesis Rothblatt denies the allegations in Paragraph 86 of the Complaint,

including that Plaintiff was ever subjected to discriminatory practices.

<u>**COMPLAINT ¶87:**</u>

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal
damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at
the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by
the Court, the costs of this action, equitable relief, and such other and further relief as may
appear warranted by this action.

<u>**ANSWER:**</u>

Paragraph 87 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules

**COUNT 5: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts (Maryland Fair Employment Practices Act, § 20-801)**

## COMPLAINT ¶88:

Plaintiff incorporates all paragraphs herein *seriatim*.

## ANSWER:

Defendant Shola Oyewole incorporates by reference the answers to Paragraphs 1-87 of the Complaint as if fully set forth herein.

## COMPLAINT ¶89:

Defendant aided and abetted the discriminatory practices against Plaintiff. As a result, Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently terminated.

## ANSWER:

Defendant Shola Oyewole denies the allegations in Paragraph 89 of the Complaint, including that Plaintiff was ever subjected to discriminatory practices.

## COMPLAINT ¶90:

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal damages statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## ANSWER:

Paragraph 90 of the Complaint contains Plaintiff's prayer for relief, to which no response is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed any monies and/or that he is entitled to any other damages, court costs, or any other relief. Defendant also expressly reserves the right to seek its own attorney's fees and costs against Plaintiff and his counsel under applicable federal and state laws and rules.

**Plaintiff's Claims Against Robert Daye**

**COUNT 6: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts**
**(Maryland Fair Employment Practices Act, § 20-801)**

**COMPLAINT ¶91:**

Plaintiff incorporates all paragraphs herein *seriatim*.

**ANSWER:**

Defendant Robert Daye incorporates by reference the answers to Paragraphs 1-90 of the

Complaint as if fully set forth herein.

**COMPLAINT ¶92:**

Defendant aided and abetted the discriminatory practices against Plaintiff. As a result,
Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently
terminated.

**ANSWER:**

Defendant Robert Daye denies the allegations in Paragraph 92 of the Complaint,

including that Plaintiff was ever subjected to discriminatory practices.

**COMPLAINT ¶93:**

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal
damages statutory damages, compensatory damages, punitive damages, pre-judgment interest at
the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by
the Court, the costs of this action, equitable relief, and such other and further relief as may
appear warranted by this action.

**ANSWER:**

Paragraph 93 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules.

**Plaintiff's Claims Against Martine Rothblatt**

**COUNT 7: Aiding, Abetting, Inciting, Compelling and Coercing Discriminatory Acts
(Maryland Fair Employment Practices Act, § 20-801)**

**COMPLAINT ¶94:**

Plaintiff incorporates all paragraphs herein *seriatim*.

**ANSWER:**

Defendant Martine Rothblatt incorporates by reference the answers to Paragraphs 1-93 of

the Complaint as if fully set forth herein.

**COMPLAINT ¶95:**

Defendant aided and abetted the discriminatory practices against Plaintiff.  As a result,
Plaintiff was subjected to a change in terms and conditions of his employment, and subsequently
terminated.

**ANSWER:**

Defendant Martine Rothblatt denies the allegations in Paragraph 95 of the Complaint,

including that Plaintiff was ever subjected to discriminatory practices.

**COMPLAINT ¶96:**

Plaintiff prays for judgment against Defendant for all damages allowable by law, nominal
damages, statutory damages, compensatory damages, punitive damages, pre-judgment interest at
the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by
the Court, the costs of this action, equitable relief, and such other and further relief as may
appear warranted by this action.

**ANSWER:**

Paragraph 75 of the Complaint contains Plaintiff's prayer for relief, to which no response

is required; insofar as an answer may be deemed necessary, Defendant denies Plaintiff is owed

any monies and/or that he is entitled to any other damages, court costs, or any other relief.

Defendant also expressly reserves the right to seek its own attorney's fees and costs against

Plaintiff and his counsel under applicable federal and state laws and rules.

## PRAYER FOR RELIEF
## PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal, and punitive), expenses, attorney's fees, and for such other and further relief as may be just and proper.

## ANSWER:

The remaining allegations contain Plaintiff's prayer for relief, to which no response is required; insofar as an answer may be deemed necessary, Defendants deny Plaintiff is owed any monies and denies that Plaintiff is entitled to any other damages, court costs, or any other relief. Defendants also expressly reserve the right to seek its own attorney's fees and costs against Plaintiff and his counsel under applicable federal and state laws and rules. All other allegations

## AFFIRMATIVE DEFENSES

By pleading the following as affirmative defenses, Defendants do not concede that each of the matters covered by the numbered defenses is to be proven by Defendants, and Defendants reserve their position that Plaintiff retains the burden of proof on all matters necessary to state the claims asserted in the Complaint and to establish his alleged damages. Defendants also specifically reserve the right to amend their Answer with additional affirmative defenses and/or counterclaims as additional investigation, discovery, and circumstances may warrant.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the applicable statute(s) of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred based on his failure to exhaust administrative remedies.

### FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff has failed to mitigate his damages, he is barred from recovery on all or a portion of his claims.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the doctrines of release, waiver, estoppel and unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

Any claims for punitive damages are barred because the alleged acts or omissions of Defendant(s) fail to rise to the level required to sustain an award of punitive damages, do not evidence a malicious, reckless or fraudulent intent to deny Plaintiff his protected rights and are not wanton or willful as to support an award of punitive damages.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for punitive damages are barred because Defendant United Therapeutics has engaged in good faith efforts to comply with federal, state and local laws.

### EIGHTH AFFIRMATIVE DEFENSE

While Defendant United Therapeutics expressly denies that any of its employees, officers or agents acted in any manner that would constitute a violation of any federal or state laws, and any such violation occurred outside the scope of employment or agency and without its consent. Defendant United Therapeutics did not authorize, condone, ratify or tolerate any tortious acts, but instead prohibited it, and such conduct may not be attributed to Defendant through principles of agency, respondeat superior or otherwise.

## NINTH AFFIRMATIVE DEFENSE

Subject to further proof, Plaintiff's claims may be barred, in whole or in part, by the doctrine of after-acquired evidence.

## TENTH AFFIRMATIVE DEFENSE

Defendants' actions regarding Plaintiff were based on a legitimate, non-discriminatory and non-retaliatory business reasons.

WHEREFORE, Defendants pray that:

1. Plaintiff's Amended Complaint be dismissed with prejudice in its entirety and that judgment be entered in favor of Defendants;

2. Plaintiff takes nothing by his Amended Complaint;

3. The Court deny Plaintiff his requested relief;

4. The Court award Defendants their costs and attorneys' fees; and

5. The Court award Defendants such further relief as it deems just and proper.

## DEFENDANT UNITED THERAPEUTICS CORPORATION'S COUNTERCLAIM AGAINST PLAINTIFF

United Therapeutics Corporation ("UT"), by and through undersigned counsel, files this Counterclaim against Mark Eke.

### INTRODUCTION

1. During 2016, Mark Eke went "through a number of trials."

2. He was dealing with "issues with his parents," as well as those created by his older brother, who, according to Eke, had been "in detention for over a month" and made "some comments that put [Eke]'s family under surveillance." By January 2017, Eke was tens of thousands of dollars in debt and needed money.

3. Eke's "whole life" depended on paying off this debt.

4.     Eke lost his job on January 4, 2017, adding further stress to his personal and financial woes.

5.     Accordingly, when Eke was presented with a Separation Agreement ("Agreement") by UT, pursuant to which he would receive nearly $32,000.00 in exchange for a variety of promises, he took advantage of the situation and the compensation offered to him and signed the Agreement.

6.     Eke had no intention of honoring the promises he made, however, and he did not do so.

7.     Instead, Eke sued UT and a number of its officers and employees for claims he expressly waived as part of the Agreement. Eke wanted to keep the money he received under the Agreement, while also suing, in an attempt to extract additional money from UT.

8.     Eke also violated the non-disclosure and non-disparagement clauses of the Agreement.

9.     This is an action for breach of contract, unjust enrichment and detrimental reliance.

**PARTIES**

10.     Eke is an individual who resides at 8710 Cameron Street, Unit 821, Silver Spring, Maryland.

11.     UT is a Delaware corporation with its principal place of business at 1040 Spring Street, Silver Spring, Maryland.

**JURISDICTION AND VENUE**

12.     This Court has original jurisdiction of these claims as compulsory counterclaims pursuant to 28 U.S.C. Sections 1332, 1441 and 1367(a), and Rule 13(a) of the Federal Rules of Civil Procedure, or in the alternative, as permissive counterclaims under Federal Rule of Civil Procedure Rule 13(b).

## FACTS

13.      UT hired Eke in May 2013.

14.      Eke initially worked in various roles in UT's Information Technology department.

15.      In approximately June 2016, Eke applied for and was transferred into a Digital Archivist position in another department.

16.      During his employment with UT, Eke received numerous pay raises and, by January 2017, was earning approximately $90,000, plus an annual performance bonus.

17.      Eke also received Share Tracking Awards Program ("STAP") grants from UT.

18.      Despite this considerable income, however, Eke had substantial personal debt while employed by UT.

19.      In fact, he sold his car in 2016, and on January 1, 2017, applied for a $50,000 personal loan.

20.      Eke repeatedly stated to UT managers and executives in January 2017, that he needed money to pay his debts.

21.      Eke was also "banking on getting [STAPS] payments" that were set to vest in May 2017 to help pay off his debts.

22.      Around this time, Eke's older brother was, according to Eke, "in detention for over a month" and had made "some comments that put [Eke]'s and family "to be under surveillance."

23.      Upon information and belief, Eke incurred significant debt, at least in part, due to his family circumstances.

24.      On January 4, 2017, Eke was absent from work without authorization and missed an important company meeting.

25.      Eke claims he went to New York to see his older brother, and "get [his] facts and documents in order."

26.      Eke's older brother, Ike Eke, denies making plans to see or actually seeing Eke on January 4, 2017, in New York or otherwise.

27.     On January 4, 2017, UT terminated Eke's employment.

28.     Also on January 4, 2017, UT provided Eke with a Separation Agreement.  (A copy of the Agreement is attached as Exhibit 1).

29.     Eke had over 22 days to review and consider the Agreement.

30.     During this time, Eke successfully negotiated non-monetary provisions of the Agreement.

31.     Eke was unsuccessful, however, in obtaining the additional compensation he wanted, including the acceleration of unvested STAP grants, which he was desperately relying on to pay off his substantial personal debt.

32.     Eke signed the Agreement on January 25, 2017.

33.     Among other provisions, the Agreement contains a general release of claims against UT and its officers and employees, including but not limited to, claims brought under Title VII of the Civil Rights Act of 1964.  The Agreement does not, however, preclude Eke from filing a charge with the Equal Employment Opportunity Commission.

34.     By signing the Agreement, Eke also waived his ability to sue UT or any of those he released as part of the Agreement, for discrimination and other employment related claims.

35.     By signing the Agreement, Eke represented that his waiver and release of claims was knowing and voluntary and that he had been given a reasonable period of time to consider whether to sign the Agreement.

36.     By signing the Agreement, Eke represented he had not been coerced, threatened or intimidated into signing it.

37.     By signing the Agreement, Eke promised not to disclose any information about it, except to an attorney, tax advisor or accountant for the purpose of obtaining professional advice about the Agreement, and Eke promised not to disparage, denigrate or convey an unfavorable impression of UT or any entity or individual released by the Agreement.

38.     On or about February 1, 2017,  UT, relying on Eke's representations and promises, paid Eke nearly $32,000 as promised in the Agreement.

39.     Eke had no intention of honoring the Agreement, he simply wanted the money—and wanted more money from UT in order to try and deal with his debts.

40.     Indeed, on September 21, 2018, in violation of the Agreement, Eke sued UT, Robert Daye, Shola Oyewole, Jenesis Rothblatt, and Martine Rothblatt—all UT employees and/or executives/officers—alleging discrimination and harassment and other common law claims.

41.     Eke claimed he signed the Agreement under duress in an effort to avoid the summary dismissal of his claims and to apply additional financial and public relations pressure on UT.

42.     In direct contravention of the Agreement, Eke disclosed the terms of his Agreement to his brothers and, on information and belief, Eke made false and disparaging statements about UT and those he released in the Agreement to various third parties, including his brothers, employees at UT, as well as the media.

43.     Eke refused to return the substantial payment he received pursuant to the Agreement.

## COUNT I -- BREACH OF CONTRACT

44.     UT incorporates all facts and allegations contained in Paragraphs 1 through 43 of the Counterclaim.

45.     UT entered into an enforceable Agreement with Eke that was supported by adequate consideration.  In exchange for a payment of approximately $32,000, Eke executed a written release of all claims that he may have had against UT and released parties as set forth in the Agreement.

46.     UT fully performed all of its obligations under the Agreement.

47.     Eke is in material breach of the Agreement because he sued UT and numerous individuals for claims he expressly waived and released.

48.     Eke is also in material breach of the Agreement because he disclosed information about it to others, and because he made false and disparaging statements about UT and those he

released in the Agreement to various third parties, including his brothers, employees at UT, as well as the media.

49.     In executing the Agreement, Eke represented, among other things: that he was entering into the Agreement knowingly and voluntarily, and that he had not been coerced, threatened, or intimidated into signing the Agreement.

50.     Eke further represented that he agreed and understood that he was entering into a general release, pursuant to which he agreed to release all claims against UT, including those for discrimination and harassment and common law claims related to his employment at UT.

51.     Since Eke now claims he signed the Agreement under duress, these representations were necessarily false when he made them.  He knowingly made these false representations in order to obtain the money UT agreed to pay him pursuant to the Agreement.

52.     Eke has violated the implied duty of good faith and fair dealing inherent in the Agreement.

### COUNT II -- UNJUST ENRICHMENT

53.     UT incorporates all facts and allegations contained in Paragraphs 1 through 52 of the Counterclaim.

54.     In accordance with its obligations under the Agreement, and in consideration of the express promises and agreements made by Eke as set forth in the Agreement – including an express written release of all claims against UT, UT paid Eke approximately $32,000.00.

55.     Eke was aware of the benefit and did not refuse the payment from UT, nor ever attempt to return these monies to UT.

56.     In direct contravention of his legal obligations, Eke breached the Agreement by suing UT and others, asserting claims he expressly released pursuant.

57.     Eke never intended to comply with the Agreement, and made false representations in an effort to obtain the money from UT.

58.     Eke's retention of the monies he received pursuant to the Agreement under these circumstances is unjust and the money should be returned or Eke should drop his lawsuit.

## COUNT III -- DETRIMENTAL RELIANCE

59.     UT incorporates all facts and allegations contained in Paragraphs 1 through 58 of the Counterclaim.

60.     In executing the Agreement, Eke made a clear and definite promise that he was entering into the Agreement knowingly and voluntarily, and that he had not been coerced, threatened, or intimidated into signing it.

61.     Similarly, in executing the Agreement, Eke made a clear and definite promise that he was releasing all claims against UT and others.

62.     In making these promises, Eke reasonably expected that his actions would induce action by UT, and the promises did induce such action.  Eke was paid approximately $32,000.00.

63.     Eke's representations to UT turned out to be untrue, as he sued UT and claims he signed the Agreement under duress.

64.     UT justifiably relied on Eke's misrepresentations in executing the Agreement and making the payment thereunder.  UT consequently suffered injury as a result of its justifiable reliance on Eke's representations.  Not enforcing Eke's promises to UT would result in an injustice.

WHEREFORE, UT requests judgment in an amount sufficient to fully compensate it for all monies paid to or for the benefit of Eke pursuant to the Agreement, for all damages proximately caused by Eke's breach of the Agreement, attorney's fees, interest and costs, and for any other relief the Court deems appropriate.

## REQUEST FOR JURY TRIAL

UT respectfully requests a jury trial on all claims so triable.

Date:   June 15, 2021                    Respectfully Submitted,

*/s/ Eric J. Janson*
Eric J. Janson, Esq.
ejanson@seyfarth.com
Christine M. Costantino
ccostantino@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, NW
Washington, D.C. 20004
(202) 463-2400 (telephone)
(202) 641-9232 (facsimile)

*Counsel for Defendant United Therapeutics*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2021, a copy of Defendants' Amended Answer and Counterclaims was filed electronically using CM/ECF, upon to the following:

Andrew Nyombi
KNA PEARL
8701 Georgia Avenue
Suite 606
Silver Spring, MD 20910

Onyebuchim Aduire Chinwah
The Chinwah Firm LLC
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910

Ikechukwu K Emejuru
Emejuru Law LLC
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910

/s/  Eric J. Janson