

Seyfarth Shaw LLP
975 F Street, N.W.
Washington, DC  20004-1454
T (202) 463-2400
F (202) 828-5393

ejanson@seyfarth.com
T (202) 828-3532

www.seyfarth.com

October 28, 2021

**VIA ECF**

The Honorable Gina L Simms
United States Magistrate Judge U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD  20770

Re:   *Mark Eke v. United Therapeutics, et al.*
      Civil Action No. 8:18-cv-2941

Dear Judge Simms:

Pursuant to the Court's October 18, 2021 order (Dkt. Nos. 103/108), Defendant United Therapeutics Corporation ("UT") respectfully requests a teleconference to address on-going deficiencies with respect to Plaintiff's discovery responses, as well as his refusal to schedule his deposition or comply with Defendants' request for an independent medical examination. Defendants submit that these discovery-related issues have been outstanding since June 2021 (*see* ECF Nos. 81, 90, and 92) largely due to Plaintiff's decision to terminate his last two legal counsel. However, Plaintiff has continued to withhold critical areas of discovery and has refused to comply with his discovery obligations. Defendants have been more than patient with prior counsel's attempts to provide appropriate supplementation, but given Plaintiff's *pro se* status and his refusal to confer in good faith over these outstanding discovery issues,[1] we have no choice but to seek the Court's intervention.  For the sake of convenience, Defendants submit that the following areas remain outstanding:

Plaintiff's Deposition -- Defendants conferred in good faith regarding the scheduling of Plaintiff's deposition -- initially noticing Plaintiff's deposition for October 28, 2021 and then issuing an amended notice of deposition for November 4, 2021. Following the withdrawal of Plaintiff's counsel, Plaintiff indicated on October 14, 2021 that he was not available to be deposed on November 4th, but would be willing to re-schedule (again) on a convenient date for both parties. That same day, the undersigned requested from Plaintiff additional dates in November for his deposition to be rescheduled.  However, Plaintiff refused to provide his availability and instead informed the undersigned that since he has already made himself available for a deposition in

---

[1] Following the withdrawal of his counsel, the undersigned attempted to meet and confer on October 18, 22, and 27, 2021 regarding these discovery issues, including attempting to schedule a call to discuss same.  However, Plaintiff has not responded and not provided any further supplementation and refused to schedule his deposition.  *See* Emails to/from M. Eke, attached hereto as Exhibit A.

76789944v.1

Phase 1 of discovery, he would not agree to schedule his Phase 2 deposition until Defendants first made certain individuals available for deposition. The undersigned explained that his deposition in Phase 1 (which was expressly limited to January 2017 time frame and solely regarding his defense of duress) was not relevant and he was not permitted to refuse to schedule his deposition in this manner. While Defendants standby fully prepared to coordinate any depositions Plaintiff seeks to take, he may not simply refuse to be deposed or otherwise ignore attempts to secure his availability for deposition.

<u>Third Supplemental Response to Interrogatory Nos. 1, 3, and 18 and 19</u>

- Plaintiff's "Pain and Suffering" Affidavit produced after his insufficient initial and supplemental responses to Defendants' discovery requests, apparently in anticipation of the September 10 mediation, details emotional distress he purportedly experienced as a result of the alleged discrimination by Defendants and alleges <u>for the first time since discovery began</u> that he sought treatment from unspecified medical provider(s) for allegedly incurable high blood pressure and other medical conditions he attributes to his discrimination by Defendants. *See* Pain and Suffering Affidavit, attached hereto as Exhibit B, Para. Nos. 33/35. However, Plaintiff has refused to provide the name(s) or address(es) for these alleged medical provider(s) or signed release(s) so his medical records can be subpoenaed.

- Defendants have also requested whether Plaintiff will produce for (virtual) deposition the three (3) spiritual advisors Plaintiff identifies as having treated him for alleged emotional distress - Pastor Chinomso Anyiam, Pastor Murphy Ugwu and Pastor Michael Nwachukwu. Since these individuals apparently reside in Africa, they cannot be subpoenaed. However, to date, Plaintiff has refused to agree to Defendants' request to make them available for deposition. If Plaintiff is unwilling or unable to secure their presence at a deposition, he should be precluded from referencing any such treatment as part of this case.

- Plaintiff's "Pain and Suffering Affidavit" also details that as a result of alleged emotional distress he experienced following the purported discrimination by Defendant(s), he ended a three-year relationship and wedding plans with his fiancée. However, to date, Plaintiff has refused to identify or provide the address for this individual so she may be subpoenaed and deposed.

- In light of the <u>extensive</u> alleged emotional distress outlined in his newly produced "Pain and Suffering" Affidavit, Defendants have also requested Plaintiff's consent to an independent psychological examination under Fed. R. Civ. Pro. 35. *See e.g. J.F. v. Correct Care Solutions, LLC*, 2018 WL 1276801, at *2 (D. Md. 2018)(granting Rule 35 psychological examination where plaintiff alleged "extreme grief," which resulted in "a variety of physical manifestations ... including trouble sleeping and fatigue" and for which he sought treatment by primary health care provider.); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 108 (E.D.N.C. 1993)("if Plaintiff intends to seek compensation for emotional distress he has suffered, Defendants should have an opportunity to assess the exact extent of this mental injury."). Plaintiff has refused to consent to his psychological examination by Defendants' expert.

Third Supplemental Response to Interrogatories Nos. 8/9 and Request for Production No. 7

- While Plaintiff has clarified that he is not seeking any damages beyond 2018, he has still not provided any information and documentation regarding what (if any) "fringe benefits, bonuses and equity shares," he received and/or was eligible or entitled to receive with any of his subsequent employers to date.  Indeed, Plaintiff contends that but for his unlawful termination, he would still be employed at United Therapeutics and would have been entitled to additional bonus(es), stock options and STAPs.  As a result, Defendants are entitled to an offset to any bonuses, short-term or long-term compensation and other "fringe benefits" he received or would have been eligible to receive at any of his subsequent employers.  To date, no such information or documentation has been provided to Defendants despite repeated requests.

Third Supplemental Response to Document Request Nos. 6 and 20

- To date, Plaintiff has produced <u>no electronic communications</u> with either of his brothers Ife Eke or Ike Eke despite testifying during his deposition that he "primarily spoke" to his brothers via text and WhatsApp.  Plaintiff has also produced <u>no electronic communications</u> with his best friend Mikia Clemons who testified during her deposition that she had extensive electronic communications with him during the relevant time period.  While Plaintiff contends that he only spoke with these individuals via WhatsApp and does not have any such communications in his custody or control, a review of the recently subpoenaed AT&T records reflect <u>thousands of text messages</u> (not What'sApp chats) with Ms. Clemons since 2015.[2]  However, Plaintiff has not produced a single text with Ms. Clemons which raises serious concerns regarding the sufficiency of his search for relevant electronic communications, potential spoliation and/or the overall credibility of his response.

- Likewise, Plaintiff contends that he has no further text communications after June 2016 with Jenesis Rothblatt in his custody or control, but as reflected in the <u>hundreds of texts between Plaintiff and Jenesis Rothblatt</u> from this time period that Defendant produced, relevant electronic communications absolutely did take place and Plaintiff only produced a selective production of them in response to Defendants' discovery requests.  For example, Plaintiff produced a text exchange with Jenesis Rothblatt from February 3, 2016 which includes a cartoon that Plaintiff contends was sexually inappropriate.  However, Plaintiff conveniently omits his immediate response back to Jenesis which contains two laughing face emojis and a comment reflecting a sexually charged response.  In light of the selective production of relevant text messages (and WhatsApp messages) with Jenesis, Ike and Ife Eke, and Mikia Clemons, Defendants now have serious concerns regarding the sufficiency of Plaintiff's production and spoliation of highly relevant electronic communications.  <u>Therefore, Defendants are requesting that Plaintiff be ordered to identify and produce all mobile electronic devices he has used since 2015 for imaging/examination by an independent forensic expert</u>.  *See e.g. Lee v. Asplundh Tree Expert Company*, 2017 WL 6731978, at *2 (W.D. Wash. 2017) (ordering plaintiff to produce cell phone for inspection and imaging by defendant's forensic expert based on selective and deceptive production of hard-copies of text messages); *Simon*

---

[2] Unfortunately, these AT&T records do not provide the *content* of these text messages and only confirm that a text message was sent or received.

*Property Group, LP v. MySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. Jun 7, 2000) (allowing imaging on a finding of "troubling discrepancies" in the opponent's document production); *Jacobson v. Starbucks Coffee Co.*, 2006 WL 3146349, at *7 (D. Kan. Oct. 31, 2006) (allowing forensic inspection of computer based on "history of incomplete and inconsistent responses to plaintiff's production requests.").

<u>Third Supplemental Response to Document Request Nos. 7,14,16</u>

- Defendants seek copies of Plaintiff's tax records from 2015 to present.  Plaintiff failed to produce any information regarding various side businesses he engaged in since 2017 (as confirmed by public records from the State of Maryland Department of Assessments and Taxation) from which non-W-2 income presumably would have been derived.  Likewise, Plaintiff has indicated for the first time in his "Pain and Suffering Affidavit" that he is seeking consequential damages from the loss of his business(es) that were purportedly attributable to his termination and alleged discrimination by Defendants.  <u>To date, Plaintiff has not produced a single document reflecting the nature of these businesses, any income derived, or losses incurred</u>.  Therefore, Defendants have established more than a sufficient basis to request Plaintiff's tax records (including any business tax records) since his termination that would substantiate his demand for consequential damages and establish the sufficiency of his mitigation efforts. *See e.g. Alberts v. Wheeling Jesuit University*, 2010 WL 1539852, at *11 (N.D.W.Va. 2010)(plaintiff in employment discrimination case ordered to produce tax records where alleging damages for backpay, inability to meet financial obligations, and personal damages); *Barnette v. City of Charlotte*, 2012 WL 3812026, at *3 (W.D.N.C. 2012)("Since Plaintiff primarily seeks relief in the form of an award for lost wages, benefits and other economic losses in an amount to be determined at trial the undersigned finds that some production of her tax returns may be relevant to the issue of her alleged economic losses."); *Coleman v. Boeing Company*, 2017 WL 11519051, at *5 (D.S.C. 2017)("the most reliable and efficient way for the Defendants to determine where the Plaintiff has worked and how much he made at those places of employment is directly from the IRS).

Sincerely,

Seyfarth Shaw LLP


*/s/ Eric J. Janson*


cc:   Mark Eke (via email and ECF)