

Seyfarth Shaw LLP
975 F Street, N.W.
Washington, DC 20004-1454
T (202) 463-2400
F (202) 828-5393

ejanson@seyfarth.com
T (202) 828-3532

www.seyfarth.com

January 21, 2022

**VIA ECF**

The Honorable Gina L Simms
United States Magistrate Judge U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

Re:    *Mark Eke v. United Therapeutics, et al.*
       Civil Action No. 8:18-cv-2941

Dear Judge Simms:

Pursuant to the Court's January 10, 2022 letter order (Dkt. No. 121), United Therapeutics Corporation ("UT") submits its reply to Plaintiff's Response to Letter Order Regarding Discovery (Dkt. No. 122).

Plaintiff's Response and deposition testimony[1] confirm he continues to withhold important information. UT has narrowed the scope of the discovery it seeks to minimize the issues before the Court, but Plaintiff should not be permitted to continue to disregard his discovery obligations and should be compelled to provide the following discovery:

<u>Third Supplemental Response to Interrogatory Nos. 1, 3, and 19—Plaintiff Should Confirm He Is Not Seeking Emotional Distress Damages, Or Be Compelled To Provide Discovery Regarding Same.</u>

- Plaintiff's signed and sworn "Pain and Suffering" Affidavit was provided to the undersigned on August 27, 2021, along with Plaintiff's Third Supplemental Responses to Defendant's Discovery Requests. *See* Exhibit A -- 8/27/21 and 8/30/21 Emails from Plaintiff's prior counsel. In this affidavit, Plaintiff detailed for the first time *extensive* emotional distress purportedly experienced as a result of alleged discrimination by Defendants, including anxiety, extreme depression, fear and paranoid thoughts,

---

[1] Plaintiff was deposed on January 19, 2022, as ordered by the Court. However, without legal basis, Plaintiff refused to answer a host of relevant questions -- including basic inquiries concerning the details of his whereabouts on January 4, 2017, the day he was terminated after openly defying a directive from his supervisor to attend a mandatory meeting involving the CEO. Although Plaintiff's deposition testimony informs UT's positions regarding the pending discovery disputes, UT will separately seek to compel responses to the unanswered deposition questions upon receipt of the transcript.

79011925v.1

- breathing issues and allegedly incurable high blood pressure for which he visited unspecified health care providers.  To date, Plaintiff has refused to provide the name(s) or address(es) for these alleged medical provider(s) or signed release(s) so his medical records can be subpoenaed.  However, during his deposition and as detailed in his Response, Plaintiff testified that his signed/sworn affidavit contains false information about his purported damages -- allegedly the result of his prior counsel -- and he said he "never claim[ed] he sought medical treatment from any medical provider" and he "is not seeking compensation…[for the] sexual harassment (sic) was subject to during his employment at United Therapeutics."  At the same time, Plaintiff's Response includes a "Compensatory Damages Questionnaire" which largely models the information provided in this Pain and Suffering Affidavit, including an unspecified "doctor" (Para 44) who diagnosed and treated him for high blood pressure in July 2019.  Given the contradictory nature of Plaintiff's submissions and assertions, UT is willing to consider this matter resolved if Plaintiff stipulates that he is in fact not seeking any compensation related to alleged emotional distress.  If Plaintiff is still seeking compensation for emotional distress, however, UT is entitled to the information sought, and the reserves the right to depose these individual(s).

- Plaintiff's "Pain and Suffering Affidavit" as well as his Response, also details that as a result of alleged emotional distress, he ended a 3 year relationship and wedding plans with his fiancée.  However, Plaintiff refused to identify or provide the address for this individual so she may be subpoenaed and deposed regarding her knowledge of Plaintiff's alleged emotional distress.  Again, if Plaintiff stipulates he is not seeking emotional distress damages, no further information is required.

<u>Third Supplemental Response to Interrogatories Nos. 8/9 and Request for Production No. 7—Based On Plaintiff's Concession He Is Not Seeking Benefits, Bonus Or Equity Shares, This Issue Is Resolved.</u>

- Plaintiff has represented that he does not claim any fringe benefits, bonuses or equity shares since 2018. Based on this representation, no further supplementation is required. If that is not the case, UT requests additional supplementation as detailed in its opening discovery letter (Dkt. No. 109).

<u>Third Supplemental Response to Document Request Nos. 6 and 20—Plaintiff Should Turn Over His Phone For Independent Forensic Inspection.</u>

- Plaintiff and Jenesis Rothblatt exchanged thousands of text messages.  Plaintiff repeatedly calls Jenesis "sweetie" and "dear" and the texts produced by UT demonstrate a close friendship, with multiple social interactions including the sharing of marijuana and alcohol.  In contrast, Plaintiff has produced only selective screenshots of texts with Jenesis Rothblatt and there are no text messages before October 2015, despite the fact that a key event in this case—an alleged improper sexual proposition--allegedly occurred in April 2015, and despite the fact that Plaintiff claims Jenesis Rothblatt sent him numerous text messages after this incident, which purportedly confirm his characterization of it.  Now, Plaintiff incorrectly suggests that all communications between him and Jenesis Rothblatt "should be available" with the records UT has subpoenaed from AT&T.  However, as UT has already made clear in its initial submission (Dkt. No. 109), these AT&T records do not provide the *content* of any text messages and simply confirm that a text message was sent or received on a given date

- and time.  All of these subpoenaed AT&T records have already been produced to Plaintiff and confirm this fact.

- These AT&T records further confirm that Plaintiff exchanged <u>thousands of text messages</u> with various other individuals whom he identified in discovery as having relevant knowledge of his claims in this case, including Jenesis Rothblatt, his brothers Ife Eke and Ike Eke and his best friend Mikia Clemmons.  However, Plaintiff has not produced a single text message or other electronic communication with Ms. Clemmons, Ife Eke or Ike Eke -- all of whom testified that they electronically communicated with Plaintiff extensively via text and/or WhatsApp about this case during the relevant time period.

- While Plaintiff has asserted that he "provided all the electronic records in his possession", UT has already provided various examples of inconsistencies in this representation, including the *hundreds* of texts between Plaintiff and Jenesis Rothblatt beginning in May 2015 that UT already produced in discovery (further proving their existence) and the selective and deceptive nature of Plaintiff's production of screenshots of texts he had with Jenesis Rothblatt, including the inexplicable absence of any texts in the critical time period leading up to his termination.

- Adding further to UT's skepticism regarding the sufficiency of Plaintiff's search, Plaintiff has refused to identify the specific electronic device(s) he used to communicate with these individuals between 2015 and present (other than an unspecified "Samsung" device used during some unspecified point in time) and refused provide any explanation why relevant text and other electronic messages with these individuals are allegedly missing. Indeed, Plaintiff testified during his deposition that he only gave his prior counsel screenshots of *selective* texts with Ms. Rothblatt that he deemed "relevant" and has since conducted his own "digital forensics" based on his extensive IT background. During his deposition, however, Plaintiff could not recall *any* details regarding what that "digital forensics" entailed or whether or not he may have used any software which could have affected the data or metadata on these devices.  While UT has repeatedly offered (including during his deposition) to have his electronic devices imaged and inspected by a forensic expert, he has refused to so without a Court order.  Therefore, UT submits that Plaintiff should be ordered to: (1) identify and produce all electronic devices (including, but not limited to, his Samsung phone he identified during his deposition) he has used since 2015 for imaging/examination by an independent forensic expert; and (2) provide a detailed explanation for any electronic devices he has used since 2015 that are no longer in his possession, including the circumstances when and why such devices were lost, deleted or otherwise no longer in his possession[2].

---

[2] Counsel for UT will retain a forensic expert whom, with access provided by Plaintiff, can image the phone and conduct searches for responsive information during relevant time periods.  The expert can provide all texts between Plaintiff and Ms. Rothblatt, and other relevant people, but would not provide texts or other information from or about non relevant people or events.

79011925v.1

<u>Third Supplemental Response to Document Request Nos. 7/14/16</u>—Plaintiff Should Be Compelled To Produce His Tax Records[3]

- Plaintiff refuses to provide copies of his tax records from 2015 to present based on his "privacy rights" and because Defendant allegedly has no compelling need for this information.  Leaving aside the fact that the Court has already concluded that Plaintiff's objections to these discovery requests are untimely (Dkt. No. 118), Defendant has articulated that these records are directly relevant to his claims for "consequential damages" stemming from the alleged loss of his businesses (*see* Pain and Suffering Affidavit Para Nos. 21 and 39). To date, however, Plaintiff has not produced a single document reflecting the nature of these businesses, any income derived, or losses incurred, leaving Defendant with no other choice but to seek his tax records reflecting these alleged business losses.  There is a protective order in place that will protect any alleged privacy concerns.

Sincerely,

Seyfarth Shaw LLP

*/s/ Eric J. Janson*

cc:    Mark Eke (via email and ECF)

---

[3] The day he was fired, Plaintiff e-mailed UT's CEO pleading for his job and/or money, asserting he had considerable debts he needed to pay off or he would have to move back to Nigeria.  Plaintiff later accepted severance monies and signed a release, but sued UT anyway and did not return the money. UT filed a counter claim against Plaintiff, alleging he signed the release and took the money because of these debts, not because, as he now claims, he was forced to sign the agreement under threat of physical violence.

79011925v.1